IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DANIELLA PRICE, Administratrix of the
Estate of ANTHONY REAVES

Plaintiff,

v.

CHARLES STEINMETZ, et al.,

Defendants.

CIVIL ACTION
NO. 19-3225

**OPINION**

**Slomsky, J.**                                                           **August 25, 2020**

## I.     INTRODUCTION

Anthony Reaves ("Reaves") was stopped by officers of the Pennsylvania State Police after he purchased cocaine.  (Doc. No. 1 ¶ 18.)  He agreed to cooperate with their ongoing investigation and made controlled buys from persons selling the illicit drugs.  (Id. ¶ 20.)  At some point, he believed that he was in danger and informed the officers that he would no longer cooperate.  (Id. ¶ 28.)  Thereafter, he was indicted for distributing of controlled substances, along with twelve co-defendants, in state court in Delaware County, Pennsylvania.  (Id. ¶ 30.)  An hour after attending a court proceeding, he was shot and killed.  (Id. ¶ at 44.)

Plaintiff in this case is Daniella Price ("Plaintiff" or "Price"), the administratrix of Reaves' estate.  She filed a Complaint against State Police Officers Charles Steinmetz and Javier Garcia and Assistant Attorney General Timothy Doherty ("Steinmetz," "Garcia," and "Doherty" respectively), alleging that they are the persons in law enforcement who interacted with Reaves and took actions that alerted Reaves' co-defendants and associates to his role as a confidential

informant.[1]  (Id. at 9.)  Plaintiff asserts that their actions led to the assassination of Reaves by criminal associates of the co-defendants.  (Id.)

In the Complaint, which was filed on July 24, 2019, Plaintiff alleges a civil rights violation, a wrongful death and a survival action.  (Doc. No. 1.)  On November 8, 2019, Officer Garcia and Officer Steinmetz filed Answers to the Complaint.  (Doc. No. 9, 10.)  Defendant Doherty, however, filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), alleging that the Complaint failed to state a claim against him.  (Doc. No. 11.)  On December 2, 2019, Plaintiff filed a response in opposition to the Motion (Doc. No. 12), and on December 11, 2019, the Court held a hearing on the Motion.  (Doc. No. 14.)

The Motion is now ripe for disposition.  For reasons set forth below, the Motion to Dismiss will be granted in part and denied in part.

## II.    BACKGROUND

In the Complaint, Plaintiff Daniella Price alleges the following facts.   In 2015, Pennsylvania State Police were investigating illicit and violent drug activity in southeastern Pennsylvania.  (Doc. No. 1 ¶ 10.)  As part of the investigation, they received authorization to intercept telecommunications from several individuals regarding the drug activity.  (Id. ¶ 14.)  On or about September 22, 2015, Defendants intercepted telephone communications suggesting there would be a drug transaction between an individual and Reaves.  (Id. ¶ 15.)  This transaction occurred and the details were imparted to State Police Officers Steinmetz and Garcia.  (Id. ¶ 16.)  After Reaves and the other man separated, Officers Steinmetz and Garcia requested that Chester City Police apprehend Reaves.  (Id. ¶ 17.)  They did so and confiscated cocaine he had purchased

---

[1]    Doherty's name is incorrectly spelled "Dougherty" in the Complaint.  (Doc. No. 11 at 1.)

during the drug transaction.  (Id. ¶ 18.)  Reaves was not arrested and was permitted to leave the area.  (Id. ¶ 18.)

Later on, Defendants contacted Reaves and told him that he could only avoid criminal prosecution if he agreed to be a confidential informant.  (Id. ¶¶ 19, 20.)  At that point Reaves told them that he was afraid of retaliation.  (Id. ¶ 20.)  Nevertheless, Reaves agreed to cooperate to avoid prosecution.  (Id. ¶ 20.)  Reaves made controlled buys of illicit drugs with Officer Garcia's assistance.  (Id. ¶¶ 21, 22.)  Reaves participated in these transactions under the belief that he would not be prosecuted and that his identity would remain confidential.  (Id. ¶ 23.)

On April 20, 2016, Reaves made a controlled drug buy from a Rasheen Caulk ("Caulk"). (Id. ¶ 24.)  Defendants authorized the arrest of Caulk immediately after the buy.  (Id. ¶ 26.)  This arrest alerted Caulk that Reaves was a police informant.  (Id. ¶ 26.)  Defendants next recorded and/or heard Caulk tell criminal associates over the phone that Reaves was a confidential informant.  (Id. ¶ 27.)  Thereafter, Reaves informed Defendants that he no longer wished to participate in the criminal investigation because he feared retribution.  (Id. ¶ 28.)  Because he would no longer cooperate, Reaves was indicted along with twelve other alleged drug dealers in state court in Delaware County, Pennsylvania.  (Id. ¶ 30.)

Bail was set for the co-defendants in amounts up to $1 million dollars.  Defendant Doherty, however, agreed that the court could set minimal bail for Reaves.  (Id. ¶¶ 32, 33.)  Plaintiff alleges that this action broadcast that he was a cooperating informant.  (Id. ¶ 34.)  Defendants subsequently intercepted a communication from the "drug dealers, entities, and/or organizations in which an express death threat and/or 'hit' on Reaves was discussed" with the co-defendants.  (Id. ¶ 37.)

On July 31, 2017, Reaves attended a status hearing in his criminal case in state court.  (Doc. No. 1 ¶ 40.)  Less than an hour after Reaves left the courthouse, he was ambushed and shot to

death by an individual acting on behalf, and at the direction, of the alleged drug dealers from whom

Reaves had made the controlled buys.  (Id. ¶ at 44.)

Plaintiff initiated this case in 2019 by filing the Complaint (Doc. No. 1) against the three

Defendants: (1) Pennsylvania State Police Officer Charles Steinmetz, (2) Pennsylvania State

Police Officer Javier Garcia, and (3) Pennsylvania Assistant Attorney General Timothy Doherty.

(Doc. No. 1 at 1-2.)

> In the Complaint, Plaintiff asserts four claims:
>
> Count I: Violation of Due Process and Equal Protection under 42 U.S.C. § 1983 against Defendants Steinmetz and Garcia;
>
> Count II: Violation of Due Process and Equal Protection under 42 U.S.C. § 1983 against Defendant Doherty;[2]
>
> Count III: Wrongful Death against all Defendants;
>
> Count IV: Survival Action against all Defendants.

(Doc. No. 1.)

As noted, on November 8, 2019, Officers Garcia and Steinmetz filed an Answer to the

Complaint.  (Doc. No. 9, 10.)  On the same day, Defendant Doherty filed the Motion to Dismiss.

(Doc. No. 11.)  In his Motion, Defendant argues that Plaintiff has failed to state claims against him

under Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 11 at 1.)  To support this contention,

Defendant Doherty argues that the allegations are insufficient to state a claim, absolute

prosecutorial immunity bars Plaintiff's § 1983 claim, sovereign immunity under state law bars the

wrongful death claim, and no independent claim exists under state law for the survival action.  (Id.)

---

2   The due process claim alleged in Counts I and II relies on a violation of substantive due process for outrageous conduct by all Defendants.  The equal protection claim is based on a theory that they treated Reaves differently from similarly situated confidential informants in other criminal investigations.  (Doc. No. 1 at 10, 13.)

On December 2, 2019, Plaintiff filed a Response in Opposition to Defendant Doherty's Motion to Dismiss.  (Doc. No. 12.)  In the Response, Plaintiff asserts that Defendant Doherty's conduct was sufficient to support the claims against him and "was not prosecutorial in nature, but rather investigatory," and therefore does not entitle him absolute immunity.  (Doc. No. 12 at 7.) Plaintiff also argues that the wrongful death and survival actions are "permissible, and in fact necessary, as they are pleaded in conjunction with a § 1983 Civil Rights Claim" and therefore are not separate, independent claims.  (Doc. No. 12 at 11.)

## III.   STANDARD OF REVIEW

### A.  The Motion to Dismiss Standard under FRCP 12(b)(6) - Failure to State a Claim.

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009).  After Iqbal it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Iqbal, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this

Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim."  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth."  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679).  The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted).  The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id.

When determining whether a claim is plausible, a district court may also consider any affirmative defenses raised by the moving party.  "Technically, the Federal Rules of Civil Procedure require that affirmative defenses be pleaded in the answer."  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (citing Fed. R. Civ. P. 12(b)).  However, the so-called "Third Circuit Rule" allows affirmative defenses to be raised in a 12(b)(6) motion.  Id.; see also Ball v. Famiglio, 726 F.3d 448, 459 n.16 (3d Cir. 2013) cert. denied, 134 S. Ct. 1547 (U.S. 2014) ("[A] number of

affirmative defenses that are not listed in Rule 12(b) [can] still be made by motion, provided that the basis of the defense [is] apparent on the face of the complaint."); Bethel v. Jendoco Const. Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) ("[A]n affirmative defense may be raised on a 12(b)(6) motion if the predicate establishing the defense is apparent from the face of the complaint.").  For instance, a statute of limitations defense may be raised in a motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."  Robinson, 313 F.3d at 135 (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)); see also Eddy v. Virgin Islands Water & Power Auth., 256 F.3d 204, 210 n.3 (3d Cir. 2001) ("qualified immunity may be raised in a motion to dismiss at the pleading stage . . . ."); Hartmann v. Time, Inc., 166 F.2d 127, 140 n.3 (3d Cir. 1947) (explaining that the defense of res judicata may be raised in the answer or in a motion to dismiss).

   **B.  The Absolute Immunity Defense of Prosecutors.**

In the Motion to Dismiss, Defendant Doherty argues that as a prosecutor he has absolute immunity against Plaintiff's § 1983 claims.  Prosecutors enjoy absolute immunity from lawsuits when their actions are related to the "initiation and pursuit of a criminal prosecution."  Richardson v. Pierce, No. CV 17-2393, 2017 WL 4776838, at *6 (E.D. Pa. Oct. 23, 2017) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993).  These actions can be described as "judicial or quasi-judicial."  Odd v. Malone, 538 F.3d 202, 208 (3d Cir. 2008) (citing Giuffre v. Bissell, 31 F.3d 1241, 1251 (3d Cir. 1994)).  A prosecutor's actions are considered quasi-judicial if they are "intimately associated with the judicial phase of the criminal process."  Buckley v. Fitzsimmons, 509 U.S. 259, 270 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)).  However, absolute immunity does not protect a prosecutor if he is engaged in purely investigatory conduct – such as functions normally performed by a detective or police officer.  Buckley, 509 U.S. 259 at

273. "When a prosecutor 'performs the investigative functions normally performed by a detective or police officer,' he is [only] entitled to qualified immunity," not absolute immunity. Richardson v. Pierce, No. CV 17-2393, 2017 WL 4776838, at *6 (E.D. Pa. Oct. 23, 2017) (quoting Buckley, 509 U.S. 259 at 273).

Absolute immunity "embodies the 'right not to stand trial,' and is properly raised in a Rule 12(b)(6) motion to dismiss." Odd v. Malone, 538 F.3d 202, 207 (3d Cir. 2008) (quoting In re Montgomery County, 215 F.3d 367, 373 (3d Cir. 2000)). Thus, if the actions of a prosecutor are found to be judicial or quasi-judicial, absolute prosecutorial immunity would preclude the defendant from having to go to trial.

A two-step analysis must be undertaken to determine if the defense of absolute prosecutorial immunity applies. Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir. 2011) (quoting Odd, 538 F.3d 202 at 208). The first is to "ascertain just what conduct forms the basis for the plaintiff's cause of action." Id. The second is to "determine what function (prosecutorial, administrative, investigative, or something else entirely) that act served." Id.

## IV.   ANALYSIS

Defendant Doherty advances three arguments for dismissal of the Complaint. First, he argues that the allegations in the Complaint are insufficient to state a claim and that Plaintiff's § 1983 claim in Count II is barred by absolute prosecutorial immunity.[3] (Doc. No. 11 at 7.) Second, Defendant contends that the wrongful death claim in Count III is precluded by state sovereign immunity. (Id. at 9.) Third, Defendant argues that because the survival action in Count IV is not an independent claim, it cannot be a basis for a separate cause of action. (Id. at 10-1.)

---

[3]   Doherty is not named as a Defendant in Count I. Only Officers Garcia and Steinmetz are listed as Defendants in Count I.

Conversely, Plaintiff argues that the facts alleged support the violations asserted in the Complaint and that the investigatory nature of Defendant's conduct precludes him from invoking absolute immunity.  (Doc. No. 12 at 7.)  In addition, the wrongful death and survival actions are permissible because they are state law claims that may be raised in conjunction with a § 1983 claim and are not barred by sovereign immunity.  (Doc. No. 12 at 11-2.)

The Court will first address the § 1983 civil rights claim, and then the wrongful death claim and survival action.

### A. Plaintiff's Civil Rights Claim Against Defendant Doherty in Count II Will Not Be Dismissed.

In Count II of the Complaint, Plaintiff alleges that Defendant Doherty, as an attorney employed by the Office of the Attorney General of the Commonwealth of Pennsylvania, violated Reaves' civil rights to Due Process and Equal Protection under the Fifth and Fourteenth Amendments.  (Doc. No. 1 at 14.)

To state a civil rights claim under § 1983, Plaintiff must allege (1) "a violation of a right secured by the Constitution or laws of the United States" and (2) that the violation was "committed by a person acting under color of state law."  Yoder v. MacMain Law Grp., LLC, 691 Fed. Appx. 59, 60 (3d Cir. 2017) (citing West v. Atkins, 487 U.S. 42, 48 (1988)).  Plaintiff contends, and Defendant Doherty concedes, that as a state prosecutor he is a state actor.  In addition, Reaves was deprived of life and liberty, protected interests under the Fourteenth Amendment.  Plaintiff further avers that Doherty violated Reaves' rights to Due Process and Equal Protection by "intentionally and/or willfully disregard[ing], and/or act[ing] with gross recklessness and deliberate indifference with respect to Reaves' personal safety, well-being, life and liberty."  (Doc. No. 1 at 14.)

The § 1983 claim against Defendant Doherty in Count II is not conclusory, but rather is premised upon actions taken by Defendant.  See Iqbal, 556 U.S. 662; (Doc. No. 1 at 9-10.)  In the

Complaint, Plaintiff asserts a substantive due process claim and an equal protection claim against Defendant Doherty arising from his failure to protect Reaves' identity as a confidential informant by "depart[ing] from well-established internal practices and procedures for criminal investigations designed to protect the safety of confidential informants, and recklessly exposed Reaves' identity as a confidential informant" and by:

 a. Forcing and/or coercing Reaves into making drug purchases from known dangerous drug dealers who were also homicide suspects;

 b. Arresting Reaves and/or Caulk and/or other drug dealers during a controlled buy operation such that it was clear and obvious to those drug dealers and known dangerous criminals that Reaves was working as a confidential informant for the police;

 c. Seeking and securing an indictment against Reaves along with co-defendants who were targets of the criminal investigation in which Reaves served as a confidential informant, such that it was clear and obvious to those drug dealers and known dangerous criminals that Reaves was working as a confidential informant for the police;

 d. Recommending, requesting, and/or acquiescing to a minimal bail amount in comparison to his co-defendants' bail amounts, such that it was clear and obvious to those drug dealers and known dangerous criminals that Reaves was working as a confidential informant for the police;

 e. Causing Reaves to present to the Delaware County Courthouse for the purpose of a hearing in the resultant criminal case, thereby putting known dangerous criminals on notice of the same, as well as providing those criminals or individuals acting on their behalf with an opportunity to ambush and murder Reaves;

 f. Failing to investigate specific death threats made against Reaves and caught on wiretap as a result of the forecasting of Reaves' identity as a confidential informant as described above, and/or failing to place Reaves in protective custody as a result of his participation in the criminal investigation as a confidential informant; and

 g. Failing to provide protection to Reaves despite the specific knowledge that Reaves' identity had been made clear and obvious to dangerous drug dealers and criminals who would plan and were planning to exact revenge upon Reaves by causing him to be murdered.

(Doc. No. 1 at 9-10.)

Based on the facts in the Complaint, and viewing them in the light most favorable to Plaintiff, Plaintiff alleges a plausible substantive due process claim. Substantive due process protects an individual against arbitrary action of the government. Sutton v. Chanceford Twp., 763 F. App'x 186 (3d Cir. 2019). The Supreme Court has "repeatedly emphasized that only the most egregious official conduct can be said to be arbitrary in the constitutional sense." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (internal quotation marks omitted). Official conduct is sufficiently outrageous only when it shocks the conscience." Id. at 846-47.

Plaintiff also plausibly alleges that other drug dealers who cooperated were treated differently and not exposed to the risk of death in violation of the equal protection clause. In the Complaint, Plaintiff states the following:

> Defendant, Doherty, in his capacity as a state actor, intentionally treated Reaves differently than other similarly situated individuals (i.e., other confidential informants in the same or other, similar criminal investigations who were instructed and coerced into making controlled buys under surveillance from dangerous criminals) by directing the arrest of Reaves during a controlled buy, and/or directed the arrest of Caulk immediately after such a controlled buy, and/or charging and prosecuting him as a result of that arrest in contravention of their agreement and representations, and/or recommending, requesting, and/or acquiescing to a minimal bail amount in comparison to his co-defendants' bail amounts, and/or causing him to present to court for the purpose of a hearing in the resultant criminal case, thereby forecasting Reaves' role as a confidential informant and putting known dangerous criminals on notice of the same, as well as providing those criminals or individuals acting on their behalf with an opportunity to ambush Reaves.

(Doc. No. 1 at 17.)

Here, given the severity of the allegations in the Complaint, Plaintiff has plausibly established that Defendant's actions rise to the level of substantive due process and equal protection claims.

Next, Defendant argues that the § 1983 claim must be dismissed because absolute immunity protects him as a prosecutor from having to stand trial for these allegations.  (Doc. No. 11.)  Once asserted, the onus is on the prosecutor to demonstrate "that absolute immunity should attach to each act he allegedly committed that gave rise to a cause of action." Fogle v. Sokol, 957 F.3d 148, 160 (3d Cir. 2020) (quoting Light v. Haws, 472 F.3d 74, 80–1 (3d Cir. 2007)).  Indeed, "[a]sserting a[n] ... immunity defense via a Rule 12(b)(6) motion subjects the defendant to a more challenging standard of review than would apply on summary judgment." Fogle, 957 F.3d 148 at 160-61 (quoting Peterson v. Jensen, 371 F.3d 1199, 1201 (10th Cir. 2004)).  It is more challenging because in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized." Fogle, 957 F.3d 148 at 161 (quoting Behrens v. Pelletier, 516 U.S. 299, 309, (1996)).  As a result, to earn the protection of absolute immunity, a defendant must show that the conduct triggering absolute immunity "clearly appear[s] on the face of the complaint." Fogle, 957 F.3d 148 at 161 (quoting Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir. 1989)).

For example, in Fogle v. Sokol, a case decided by the Third Circuit, a prosecutor was accused of using evidence at trial knowing that it was false and in direct contradiction to evidence obtained earlier in the investigation.  957 F.3d 148 at 161-62.  Based on the language in the complaint, it was unclear if this contention meant that the prosecutor was involved with state troopers in shaping a witness' false testimony or that he was simply aware of the fact that the testimony was false.  Id. at 162.  The Third Circuit noted that for a prosecutor to succeed on a motion to dismiss based on absolute immunity, "the defense must clearly appear on the face of the complaint."  Id. (quoting Wilson v. Rackmill, 878 F.2d 772, 776 (3d Cir. 1989)).  The court determined that "while more scrutiny, and additional facts, may produce a different result," the

prosecutor had not yet carried his burden that he was entitled to the defense of immunity.[4]  Id. at 161-62.

Similar to the claims alleged in Fogle, the claims against Doherty here based on the allegations in the Complaint are unclear.  Id.  Plaintiff alleges in the Complaint that all Defendants took multiple actions during their contact with Reaves and these actions caused his death.  (Doc. No. 1 at 9.)  However, the extent of Defendant Doherty's participation in certain activities is unclear.  For example, when Plaintiff alleges that all Defendants were involved in forcing and/or coercing Reaves to become a confidential informant and in ordering Reaves' arrest immediately after a controlled buy, it is unclear if Doherty was the one speaking directly to Reaves or giving orders to someone else to speak to Reaves.  (Doc. No. 1 at 9.)  Similarly, when Plaintiff alleges that all Defendants failed to investigate intercepted death threats towards Reaves, it is unclear if Doherty was the one intercepting the threats or was simply aware that threats had been communicated.  Id. Other ambiguities on the extent of Defendant's involvement in the conduct

---

[4]   In the Fogle opinion at n. 14, the court noted as follows regarding absolute immunity:

> We have recognized that where "a lack of factual specificity in a complaint prevents the defendant from framing a fact-specific qualified immunity defense, which, in turn, precludes the district court from engaging in a meaningful qualified immunity analysis[,] [t]he appropriate remedy is the granting of a defense motion for a more definite statement under Federal Rule 12(e)." Thomas v. Independence Township, 463 F.3d 285, 289 (3d Cir. 2006); see also Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321 n.10 (11th Cir. 2015). This rings equally true for invocations of absolute immunity. Courts should be mindful that where the allegations in a complaint do not require a more definite statement, immunity defenses will often require the benefit of discovery. Russell, 905 F.3d at 253 (quoting Thomas, 463 F.3d at 301) (noting "summary judgment remains a useful tool for precluding insubstantial claims from proceeding to trial"); see also Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring in part and concurring in the judgment) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal."). We defer to the District Court to determine the best path.

alleged are contained in the Complaint.  As a result, the Court must examine each of the actions of Doherty alleged in the Complaint to determine if he is entitled to absolute immunity.

### 1.  Forcing and/or Coercing Reaves to be a Confidential Informant.

In Count II, Plaintiff alleges that Defendant Doherty violated Reaves' civil rights by convincing Reaves to become a confidential informant and forcing and/or coercing him to engage in illicit drug sales.  (Doc. No. 1 at 9.)  Plaintiff alleges that these acts, along with subsequent ones that revealed Reaves' identity as a confidential informant to the individuals who later murdered him, was a direct cause of his death.  Id.

In Defendant Doherty's Motion to Dismiss, he asserts that absolute immunity precludes this claim from advancing to trial.  (Doc. No. 11 at 7.)  As noted, "when a prosecutor 'performs the investigative functions normally performed by a detective or police officer,' he is entitled to qualified immunity" instead of absolute immunity.  Richardson v. Pierce, 2017 WL 4776838, at *5 (E.D. Pa., Oct. 23, 2017) (quoting Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993)).

Here, Plaintiff alleges that Defendant Doherty convinced Reaves to be a confidential informant and to engage in the drug buys when he "told Reaves that he could only avoid criminal prosecution if he agreed to cooperate with the ongoing investigation" into local drug sales.  (Doc. No. 1 at 4.)  Convincing Reaves to be a confidential informant and to actively engage in the buys is a function that a police officer would undertake, making it an investigative activity.  See Buckley, 509 U.S. 259 at 273.  In addition, even if Defendant Doherty's involvement in this action consisted of merely advising the police, "prosecutors are not entitled to absolute immunity for their actions in giving legal advice to the police."  Id.

As shown in Fogle, since the "defense must clearly appear on the face of the complaint," and here the exact nature of Defendant Doherty's role in convincing Reaves to become an active confidential informant is not totally certain, Defendant has not met his burden on the Motion to

Dismiss.  <u>Fogle</u>, 957 F.3d at 161-62 (quoting <u>Wilson v. Rackmill</u>, 878 F.2d 772, 776 (3d Cir. 1989)).  As these are investigative, and not a quasi-judicial activities, Defendant Doherty's involvement in coordinating the investigation involving the confidential informant is not protected by absolute prosecutorial immunity.

### 2.  Ordering Reaves' and/or Caulk's Arrest Immediately After a Controlled Buy.

In the Complaint, Plaintiff alleges that Defendant Doherty ordered Reaves and/or Caulk arrest immediately after Reaves performed a controlled buy, which allegedly alerted Caulk that Reaves was a confidential informant.  (Doc. No. 1 at 9.)  Defendant Doherty again asserts in his Motion to Dismiss that he is entitled to absolute immunity for his involvement in the arrests.  (Doc. No. 11 at 7.)

Although the time of arrest may be referenced as the divider between the investigatory and judicial parts of a case, there is no "bright-line" rule for absolute immunity purposes.  <u>Odd</u>, 538 F.3d 202 at 210.  Courts cannot use "the timing of the prosecutor's action (e.g. pre- or post-indictment), or its location (<u>i.e.</u>, in- or out-of-court), as dispositive" on whether absolute prosecutorial immunity applies.  <u>Id.</u>  These factors are relevant, however, "to the extent that they bear upon the nature of the function the prosecutor is performing."  <u>Id.</u>  Indeed, the Third Circuit has said that "the period during which prosecutors are most likely functioning in a 'quasi-judicial' capacity is the time between indictment and dismissal, acquittal, or conviction."  <u>Id.</u> at 211 (citing <u>Yarris v. County of Delaware</u>, 464 F.3d 129 (3d Cir. 2006)).  Accordingly, the prosecutorial immunity analysis must focus on "the unique facts of each case and requires careful dissection of the prosecutor's actions."  <u>Id.</u> at 210.

Here, according to Plaintiff, Defendant Doherty ordered the arrest of Reaves and Caulk. (Doc. No. 9 at 1.)  This action would have taken place before the arrest was actually executed, and

although the "timing of the prosecutor's action" is not "dispositive," it is a relevant factor in determining the function the prosecutor is performing.  <u>Odd</u>, 538 F.3d 202 at 210.  The act of ordering an arrest is both an action taken before an individual is arrested and an action that can be undertaken by police officers.  Since this function may be conducted by the police, it is by its nature investigative.  As such, it is an investigative, not a quasi-judicial, activity.  For this reason, Defendant Doherty's involvement in ordering the arrest is not protected by absolute immunity.

### 3.  Failing to Investigate Intercepted Death Threats Made Toward Reaves.

Plaintiff alleges that Defendant Doherty either listened to or was aware of a phone recording between Caulk and criminal associates in which death threats were made on Reaves' life as retribution for his role as a confidential informant.  (Doc. No. at 9.)  Whether Doherty was the individual who intercepted the communications with the death threats or was simply aware of them, investigating the death threats is a function ordinarily carried out by police officers as part of their investigative duties.  For this reason, Defendant Doherty is not entitled to absolute immunity for his alleged failure to investigate the threats to Reaves.

### 4.  Failing to Provide Protection to Reaves Despite Knowing About the Death Threats.

Plaintiff alleges that Defendant Doherty did not provide Reaves with appropriate protection given the threats against him.  (<u>Id.</u> at 9.)  Plaintiff argues that because Doherty failed to protect Reaves despite being "specifically aware that Reaves' life was in immediate and substantial danger" and "assuring Reaves that his identity would be protected," Doherty is liable for Reaves' death.  (Doc. No. 12 at 10-1.)  Like the allegation that Doherty failed to investigate death threats, the allegation that Doherty failed to protect Reaves from death threats is rooted in his inaction rather than action.  Here, the protection sought by Reaves from the death threats would have been

manifested in actions typically taken by the police in their investigative capacity.  Since this type of protection would be a function of the police, Defendant Doherty is not entitled to absolute immunity for his failure to provide Reaves with protection.

### 5.   Setting a Minimal Bail Amount.

Plaintiff also alleges that Defendant Doherty was involved in the process of setting a bail amount that was so far below that of the co-defendants' in Reaves' criminal case that it indicated to others that he was a confidential informant.  (Doc. No. 1 at 9.)  Setting the amount of bail is a judicial decision.  However, a prosecutor may advocate for a specific amount of bail to be imposed. Moreover, the bail hearing would occur in court where the prosecutor is the lawyer for the state performing quasi-judicial activities.  Thus, to the extent that the prosecutor did influence the bail amount set for Reaves, he has absolute immunity as this action is an appropriate prosecutorial function and done in a quasi-judicial capacity.

### 6.   Charging and Prosecuting Reaves.

Plaintiff also alleges that Defendant Doherty decided to indict and prosecute Reaves after he informed law enforcement that he no longer wished to participate as a confidential informant because he feared for his life.  (Doc. No. 1 at 9.)  Courts have found that prosecutors are absolutely immune from claims arising from their conduct at the beginning of a prosecution.  Imbler v. Pachtman, 424 U.S. 409, 431 (1976).  This even includes "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings, Kulwicki v. Dawson, 969 F.2d 1454, 1465 (3d Cir. 1992), presenting a case at trial, Imbler, 424 U.S. 409 at 431, and presenting evidence to a judge, Burns v. Reed, 500 U.S. 478, 491–92 (1991).  The action of deciding to indict and prosecute an individual is a prosecutorial action and as a result falls under the umbrella of

quasi-judicial activities.  Therefore, Defendant Doherty's decision to indict and prosecute Reaves

falls within the scope of prosecutorial action for which he is entitled to absolute immunity.

### 7.   Securing Reaves' Appearance in Delaware County Court.

Plaintiff alleges that Defendant Doherty played a role in having Reaves appear in the

Delaware County Courthouse at a predetermined public time and place.  (Doc. No. 1 at 9.)  Plaintiff

alleges that this allowed Reaves' murderers to know where they could find him.  (Id. at 7.)

Roughly an hour after his appearance, he was murdered.  (Id. at 8.)  The action of setting an

appearance date in court for a defendant is a function of the judiciary, not a prosecutor.  And an

appearance of this nature would be a public record as a matter of course.  However, to the extent

that Defendant Doherty was involved in the process of setting a date for the court appearance, he

has absolute immunity as this action is typical of a quasi-judicial function typical of a prosecutor.

### B.  The Wrongful Death Claim Against Defendant Doherty Will Not Be Dismissed.

Next, the Court will consider Defendant Doherty's argument that Plaintiff's wrongful death

claim in Count III is precluded by sovereign immunity.  (Doc. No. 11 at 9.)  In Count III, Plaintiff

brings a wrongful death claim pursuant to 42 Pa.C.S.A. § 8301 to recover damages for the alleged

violation of Reaves' federal civil rights.[5]  (Doc. No. 1 at 19.)  Under Pennsylvania law, an action

to recover damages for a wrongful death may be brought for the benefit of the spouse, children, or

parents of the deceased.  42 Pa.C.S.A. § 8301.  The action here is brought to collect damages for

the benefit of Reaves' minor daughter K.R.  (Doc. No. 1 at 19.)  The Pennsylvania wrongful death

statute, 42 Pa.C.S.A. § 8301, provides:

---

[5]    At the hearing held on December 11, 2019, counsel for Defendant and Plaintiff agreed
that the wrongful death and survival actions are not being brought as independent
claims, but are merely vehicles for asserting § 1983 claims and providing a remedy for
this violation of federal law.  (See Doc. No. 14.)

(a) General rule.--An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

(b) Beneficiaries.--Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth

(c) Special damages.--In an action brought under subsection (a), the plaintiff shall be entitled to recover, in addition to other damages, damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

(d) Action by personal representative.--If no person is eligible to recover damages under subsection (b), the personal representative of the deceased may bring an action to recover damages for reasonable hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of injuries causing death.

Defendant Doherty challenges this claim in his Motion to Dismiss by asserting that the wrongful death claim is barred by state sovereign immunity as codified in Pa.C.S. § 2310, which precludes "the Commonwealth, and its officials, and employees acting within the scope of their duties" from suit due to "sovereign immunity and official immunity" except for specific waivers of immunity that are not present here.[6] He contends that state tort claims are ordinarily barred by

---

[6]   None of the exceptions of the Pennsylvania sovereign immunity statute apply to the claim at hand: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes; (6) care, custody, or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.  See 42 Pa.C.S. § 8522(b); (Doc. No. 11 at 9.)

sovereign immunity.  See Johnson v. Commonwealth of Pa. DOC, No. 92-5149, 1992 WL 392601, at *1 (E.D. Pa. 1992).

Plaintiff asserts here, however, that the wrongful death and survival statutes are merely vehicles for Plaintiff to bring a § 1983 action against the three defendants and that the § 1983 action cannot be barred by the Pennsylvania Sovereign Immunity Act.  (Doc. No. 12 at 11.)  In this regard, the Third Circuit has held that "the governmental immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Act."  Wade v. Pittsburgh, 765 F.2d 405, 407-08 (3rd Cir. 1985).  This is self-evident because "the supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law."  Id.  Therefore, because a wrongful death claim by itself does not create a cause of action but is merely a vehicle through which this action is brought, and the state governmental immunity statute does not bar a federal civil rights claim, the Motion to Dismiss the wrongful death claim will be denied.

Furthermore, as Plaintiff points out in his opposition to dismissal, there is another potential hurdle for Defendant to overcome on the wrongful death claim—the injured party is not alive to bring suit.  (Doc. No. 12 at 12.)  "It has of course been well established for many years that a cause of action arising under a federal civil rights statute does not die with the victim of the alleged constitutional wrong."  Baffa v. Black, 481 F.Supp. 1083, 1085-86 (E.D.Pa. 1979).  However, since the Civil Rights Act does not have a provision covering this contingency, courts look to state law to discern if a civil rights claim survives a decedent's death.  42 U.S.C. § 1988.[7]  Section 1988

---

[7]   42 U.S.C. § 1988(a) provides:

The jurisdiction in civil and criminal matters conferred … for the protection of all persons in the United States in their civil rights, and for their vindication, shall be

dictates that state statutory law is the reference point for determining the survival of a civil rights

action.  Robertson v. Wegmann, 436 U.S. 584, 589 (1978); Giles v. Campbell, 698 F.3d 153, 156

(3rd Cir. 2012).

Although the Third Circuit has not directly addressed whether a wrongful death action may

be brought through a § 1983 claim, Plaintiff points to a recent case from the Western District of

Pennsylvania that comments on this question.  (Doc. No. 12 at 12-3.)  There, the court quoted from

a decision of Fifth Circuit as follows:

> the utilization of local death and survival statutes does not do more than create an
> effective remedy. This is so because the right is surely a federally protected one-
> the right to be free from deprivation of constitutional rights. The local death or
> survival statute adopted by reference in this fashion does not add to that substantive
> right. It merely assures that there will be a 'remedy' -a way that right will be
> vindicated if there is a violation of it.

Maldet v. Johnstown Police Department, 2019 WL 2435869, at *7 (W.D. Pa., June 11, 2019)

(citing Brazier v. Cherry, 293 F.2d 401, 405 (5th Cir. 1961)).

The district court in Maldet further noted that the purpose of § 1983 would be frustrated if

it depended on the survival of the individual bringing the claim.  Id.  § 1983 does not create any

substantive right, but merely provides a vehicle through which a federal civil right may be

"vindicated." Moyer v. Berks Heim Nursing Home, 2014 WL 1096043, at *2 (E.D. Pa., Mar. 20,

2014).  In this regard, a wrongful death statute assures that there is a remedy by which a violation

---

exercised and enforced in conformity with the laws of the United States, so far as
such laws are suitable to carry the same into effect; but in all cases where they are
not adapted to the object, or are deficient in the provisions necessary to furnish
suitable remedies and punish offenses against law, the common law, as modified
and changed by the constitution and statutes of the State wherein the court having
jurisdiction of such civil or criminal cause is held, so far as the same is not
inconsistent with the Constitution and laws of the United States, shall be extended
to and govern the said courts in the trial and disposition of the cause, and, if it is of
a criminal nature, in the infliction of punishment on the party found guilty.

of a federal civil right may be vindicated.  Maldet v. Johnstown Police Department, 2019 WL 2435869, at *6 (W.D. Pa., June 11, 2019) (citing Brazier v. Cherry, 293 F.2d 401 (5th Cir. 1961)). This reasoning is well-founded and this Court agrees that § 1983 would be frustrated if it was dependent on the survival of the individual whose federal civil rights were allegedly violated.

Therefore, "the governmental immunity statute, although effective against a state tort claim, has no force when applied to suits under the Civil Rights Act."  Wade v. Pittsburgh, 765 F.2d 405, 407-08 (3rd Cir. 1985).  Since the purpose of the § 1983 would be frustrated by precluding the use of the wrongful death action based on Pennsylvania's sovereign immunity statute and by precluding a suit because the victim is deceased, the Motion to Dismiss this claim will be denied.

### C.  The Survival Action Against Defendant Doherty Will Not be Dismissed.

Finally, Defendant Doherty contends that because the survival action in Count IV is not an independent claim, it cannot be a basis for a separate cause of action.  (Doc. No. 11 at 10-1.)  In Count IV, Plaintiff brings a survival action under 42 Pa.C.S.A. § 8302 to recover damages for the alleged violation of Reaves' federal civil rights under 42 U.S.C. § 1983.  (Doc. No. 1 at 19.)  This action is also brought to collect damages for the benefit of Reaves' minor daughter K.R.  Id.  The Pennsylvania survival action statute provides that "all causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants."  42 Pa.C.S.A. § 8302.

Defendant Doherty challenges the validity of this action in his Motion to Dismiss by asserting that the survival action does not state an independent claim.  (Doc. No. 11 at 10.)  While he recognizes that the Pennsylvania survival action statute provides a vehicle for "an estate to

recover damages for the alleged § 1983 violations suffered by the deceased," he says that it cannot stand as a separate cause of action.  Id.

Defendant is correct that the Pennsylvania survival action statute is simply a means by which to bring a cause of action, but as noted in Plaintiff's response (Doc. No. 12 at 11) and at the hearing in this case (Doc. No. 14), the statute is not being used by Plaintiff here as an independent claim.  At the hearing held on December 11, 2019, counsel for Defendant and Plaintiff agreed that the wrongful death and survival actions are not being brought as independent claims.  (Doc. No. 14.)

Both the wrongful death and survival actions are pled in conjunction with the § 1983 civil rights claim.  Thus, because the survival action is not an independent claim, but rather is a vehicle under state law through which the § 1983 federal civil rights claim may be brought, Defendant's Motion to Dismiss this claim will be denied.

## V.   CONCLUSION

For the foregoing reasons, Defendant Doherty's Motion to Dismiss will be granted in part and denied in part.  An appropriate Order follows.